sank and splitting my time today with amicus counsel from the EEOC, Mr. Convatt, Scott sufficiently pled all allegations of retaliation that are that are sufficient under the opposition clause. This is a case about cause and effect. Scott had positive performance reviews and received a merit increase through January of 2018. He then overheard Seward's plan to terminate four African-American employees, told the employees of the plan, one of them complained to HR, and he was called in for an HR investigation. He expressed concern to HR that he was going to be retaliated against, and they assured him it would be okay. Once Scott gave that determination, after he gave that statement, he began experiencing disparate treatment in the approval of his loans, which affected his performance. It was five months, I believe, until his termination, which is a somewhat weak causal connection based on our case law. I'm not suggesting that we've never had a case that long, but normally, as you know, the interim was considerably shorter than that. Under long and right way, you have to look at the entirety of his actions, and so it's not just the first interaction with HR. It's the three additional complaints of retaliation followed by verbal counselings, a very contentious meeting in May where he tells them, he says, you're harassing me, or you're trying to fire me, and they say, no, but you could resign if you want to, and then they terminate him the next day. This court's precedent in long, where a woman complains about a sexually offensive joke about condoms, experiences disparate treatment, and then complains twice more about retaliation before being fired, is in line with what's going on here. You have to look at the totality of the circumstances rather than slicing and dicing it into individual complaints, and we believe that Scott's termination was directly caused by his participation in the HR interview. Specifically, they had to paper the file before they could let go of an employee who had a previously unblemished record. There's no dispute that Scott's participation in the employer's internal investigation could support a retaliation claim under the opposition clause, as found by the Supreme Court in Crawford. So the question we have to delve into is, did he have a reasonable belief of unlawful conduct? This court's precedent in pain and right way specifically finds that you don't have to prove an actual violation. It's just a reasonable belief. There's a zone of protected conduct between the actual and the perceived violation. Here, Scott's statement to HR, they're going to fire four African Americans. We can all imagine a situation where four black people from the same department being fired at the same time is in and of itself discrimination. What does the record reflect specifically about whether the reference was only to four employees who happen to be black or whether the statement itself referenced their race? ROA 5, the plaintiff's complaint, specifically says Seward said he intended to fire four African American employees. So that's what the record is today at a 12 v. 6 determination. Scott's reasonable belief is further bolstered by, one, the fact that he expressed HR concern about retaliation. Two, as we learn in right way, the fact that HR was investigating. Right way says when a lay person sees conduct and thinks, that might be discrimination. And then shortly thereafter, HR calls them in and they're investigating that. A lay person could form a reasonable belief that the underlying conduct is unlawful simply because HR is choosing to investigate. Ah, I was right. That was discrimination. And third, as we learn in right way and long, the employer's reaction to his investigation complaint also plays a role. Here, where he had this escalating path of disparate treatment, complaint of warning, complaint of retaliation, disparate treatment, complaint of retaliation, and then termination, that is just like this court found was sufficient at the summary judgment stage in right way and long. Um, in our opinion, the district court engaged in an unnecessary heightened MSJ evaluation when they delved into the specifics of Seward's comment. Had Burton waited until she'd been fired to go to HR and complain, the court would have never gotten into that. It would be a question of an adverse employment decision. Was firing four African Americans a reasonable basis to believe unlawful conduct? The mere fact that Burton went to HR before she could be fired shouldn't change that analysis into a hostile environment analysis. We should not delve into a stray remark and there should be no issue of whether or not there is sufficient alternative circumstantial evidence of intent. You don't have to go there. And it was wrong for the Supreme, for the trial court to do that, as we saw in Sicily's, where the court ruled that you don't get into the comparative. Okay, so I understand the stray remark when you talk about harassment. You still need more than just sort of one wrong conduct, wrong statement, although I definitely do not recommend anybody making those statements. But in this context, I mean, this statement, if it's a stray remark, then there's nothing. Well, and I don't think it is a stray remark. It's not a stray remark because it was a plan. I'm going to fire four black people. Had they gone to HR and complained about they fired four black people, we wouldn't look at a stray remark. Well, but stray remark can also be, was this firing racially based? It could have been that he was simply wanting to tell his colleague, who is also African American, hey, I'm doing this, but not because. Okay, I'm not saying that's what he was saying, but you know, so the statement could be, oh my gosh, I'm very concerned that it turns out that this is the case. Or it could be, I'm firing them because. So how do we analyze that? You don't. It's the 12B6 stage. At the 12B6 stage, where there's been no discovery and no testimony, that is an improper analysis. So you're saying the possible constructions are something we have to construe in favor of your client. So that means we have to construe it as, hey, I'm doing this because. Exactly. And if you disagree and you think that we need additional evidence of the circumstantial evidence of intent, then the trial court erred by denying the motion for leave to amend the complaint. Well, let's talk about that. You did a great job in the brief here about what you would amend with, but there's none of that in the district court. As well, I'm a little bit unclear why they didn't just amend, because I think it was within the time frame it could. So how can that be something we reverse on? At an R0838, in the original brief, we asked for alternative leave to amend, and we specifically said that we think Burton's complaint to HR about, hey, I'm going to fire four African Americans, and Scott's statement about the same, is sufficient evidence of underlying discrimination. But if you disagree, we can plead additional facts. So the alternative leave request was about reasonable belief. This court's upholding of denials of leave to amend has always been in situations where there was delay, dilatory motive, multiple failures to cure. Remember that in this case... But why not just amend? Because I was faced with a very bare-bones, scattershot 12b6 motion that had two sentences about reasonable belief. It didn't, until we had fully briefed it and the court had given a large opinion, it had never fleshed out what the court's concern about the pleadings was. This wasn't a situation where I ignored the court's concerns about pleadings and failed to deal with it. It's more like NRA beef antitrust litigation, where the court's rulings made previously less significant facts more significant. And leave to amend should be granted in that situation. Thank you. Thank you, Ms. Coe. You saved time for rebuttal. Mr. Covnat, or if I mispronounced that, please correct me. It's Mr. Covnat, Judge Smith. Covnat, all right. Good morning, Your Honors. May it please the Court, Philip Covnat, counsel for the EEOC, as amicus. This case raises interesting and important questions about the reasonable belief standard, which comes up in the context of determining whether employee opposition is protected from retaliation. But in granting U.S. Bank's 12b6 motion, the district court made several errors that require reversal. First, fundamentally, the court failed to recognize that Mr. Scott's initial act of opposition when he reported Seward's comment that he intended to fire four African-American employees, that can give rise to a reasonable suspicion that race is a factor in a termination decision, which is a quintessential form of employment discrimination. And the court also failed to consider the context and the setting in which Mr. Scott gave that witness statement, which was in response to inquiries from his employer during an HR investigation. And we know from this court's decision in Rightway, as Ms. Cole just said, that the very fact that the employer itself is concerned enough about discrimination, that it has launched an investigation, that can lend credence to an employee's belief that what he is reporting is unlawful discrimination. And the other thing I would say about Rightway, and I think Ms. Cole also mentioned this, the question must be analyzed from the perspective of a layperson, not someone who is trained in anti-discrimination law. And that makes perfect sense under the reasonable belief standard. Now, the district court also failed to consider the entirety of Mr. Scott's opposition conduct, because he not only opposed Mr. Seward's remark in the context of the HR investigation, he also engaged in at least three additional acts of opposition to what seemed to be a pattern of retaliation linked to his original witness statement. And because retaliation is itself an unlawful employment practice, that can also support a reasonable belief that unlawful discrimination is occurring. And then the other thing that we pointed out in our brief about the district court's opinion here is that it really held Mr. Scott to a heightened standard both from a pleading perspective and also a substantive perspective. And that is, first of all, the court criticized Mr. Scott's complaint for lacking circumstantial evidence to create an inference of Seward's discriminatory intent. But that's wrong for at least two reasons. First, it's well established that plaintiffs do not need evidence at the pleading stage. That's what discovery is for. But more fundamentally, what the district court was doing was insisting that Mr. Scott plausibly plead an actual underlying violation. Because if the complaint contained allegations that would create an inference of Seward's discriminatory intent, then the district court would have to provide the requirement that the underlying violation should go past the 12b-6 stage. But that's not the standard. The standard is just whether he plausibly alleged facts to support a reasonable belief, which is a distinctly lower bar. So could there never be a 12b-6 in a situation like that? Because you're talking about the person's reasonable belief and that's a low standard? Oh, well, there's certainly... Maybe you're supposed to defer to them and... No, Your Honor. There are limiting principles. For example, if the original act of opposition was something that didn't even implicate Title VII, like it didn't implicate a protected characteristic such as race. For example, he was reporting that Seward said, I'm going to fire four people with blonde hair, for example. That could never give rise to a reasonable belief of a violation of an anti-discrimination law. Or if it was just plainly frivolous, if the initial complaint was just complete... I mean, you know, the Supreme Court's decision in Breeden might be an example where it's just one off-color remark. It can never support an actual violation or even come close to it. Then perhaps that would be a limiting principle. But here, what Mr. Scott opposed was a comment from a manager to another manager saying that he intended to fire four African-Americans, which is pretty close to an actual violation of Title VII, assuming it was carried out. Does it matter whether they were fired or not? In our view, from the reasonable belief perspective, it should not matter, because the anti-retaliation provision is meant to be prophylactic in that, you know, employees are encouraged to speak up and voice opposition before discrimination actually occurs. So it wouldn't make any sense to require Mr. Scott to wait until the individuals were actually terminated before he could be The other thing I would like to mention is Ms. Cole and Judge Haynes talked about the stray remark issue, and the District Court here talked about the isolated comment doctrine, which arose in a few decisions of this Court. I think Wright Way, the unpublished decision in Satterwhite. The reason that this case is different is that the underlying violation in all those cases was a hostile work environment. And so it makes sense in that context to think about stray remarks or isolated comments, because a hostile work environment is one unlawful employment practice that is comprised of multiple acts. But here, what Mr. Scott was opposing initially was an actual termination decision, which Well, and I mean, I understand, and I asked about that, because I understand the hostile work environment's a different category than pure discrimination. But I wonder if the stray remark argument fits here, because we don't know what he meant by that. Was he just really concerned that there were four people that messed up and that happened to be a particular race, or was he wanting to fire them because of their race? Right. I see my red light is on. May I just respond? Sure. I totally understand that, Your Honor. I think there are two separate issues here. I think the ambiguity as to what and all allegations must be construed in the light most favorable to Mr. Scott. So at this stage, we have to assume that what he meant is at least could support a reasonable belief that it was because they were African-American. Now, and so once we assume that, then we're not in the stray remark paradigm, because then I understand that. Okay. And if Your Honors have no additional questions, I will sit down. Thank you, Mr. Kozloff. Thank you, Your Honor. We appreciate the Commission's participation as amicus and your availability to present  Thank you, Your Honor. We're happy to be here. Ms. Taylor? May it please the Court? I'm Shelby Taylor with Littler Mendelsohn for the Appley U.S. Bank. I appreciate the opportunity to have my first oral argument in front of the Fifth Amendment. Based on the pleadings, briefings, and materials before him, the district court's dismissal of Appellant Scott's complaint for failure to state a claim was correct. We're not discussing the participation clause at issue here today. The EEOC has conceded in its brief they don't believe that's an issue, so I want to turn to the opposition clause directly. While the U.S. Bank disagrees with the district court's determination that the opposition clause extends to responses to internal investigators' questions when the fact remains that even interpreting the clause as Judge Fish did still result in a proper dismissal of Scott's claims. There are no magic words required, but Scott didn't oppose anything. All we heard was a statement of, I'm going to fire, potentially, four African American people. We don't know for certain that's the statement. And looking verbatim, it can't be, because Scott knew a person whom the statement was directed and warned her. He didn't go to HR. He didn't do anything else. He didn't say, I'm, I don't agree with the determination. Well, if that's all that happened, I would agree, but the problem is he did tell the employees, and then one of them reported it, and then he responded to the HR, so that's the, you know, beginning of the pathway that leads us here today, I think. Had he simply told the employees, they simply ignored it, and then they were never fired, this would have all just fallen by the wayside. But once one of the employees went to HR and complained, I don't want to be fired because of my race, and HR starts investigating, now we're in a different bucket, right? Right, that's correct, but we still don't know the context of his complaint to, or his participation to HR. It could have just been, I'm, this is the statement I heard, this is what I'm relaying to HR, and if that's enough, that's fine, but the actions that proceeded to follow were not retaliatory based on his conduct that occurred in this investigation five months ago. That sounds very summary judgment-esque. How can we decide that on 12b-6? I mean, I could see y'all following summary judgment, there not being sufficient evidence to sustain it, or ultimately going to trial and persuading the jury you're right. I mean, I absolutely can see how you ultimately win the case, but explain the 12b-6 context. Right, so the 12b-6 context, he, it's a light pleading requirement for him. He just has to make basic allegations to survive a 12b-6, and he wasn't able to do that in his pleadings. Judge Fish's memorandum opinion had pages and pages of explanation of why the facts alleged weren't enough, and in his briefing, he only then, in the appellate briefing, cites a bullet list of information, and he even concedes, I know the court can't consider this information, so, but if I were able to amend my complaint to add this, to go back and bolster my 12b-6, this is what I would add. He knows he can't add that. We can't add that here. We're just looking at what's in the record, and what's looking in the record is sparse and not enough. So the real issue here is whether Scott should have been permitted to amend his complaint based on his one sentence request, which is essentially a savings clause, in his reply to U.S. Bank's motion to dismiss. So what the district court was faced with was, first, plaintiff filed an original complaint. He could have amended his complaint at any time before U.S. Bank responded. U.S. Bank filed a motion to dismiss. Under Rule 15, he could have amended his complaint then instead of responding. However, he stood on his pleadings. He felt there were... So are you saying if Scott loses on the failure to grant the motion to amend argument, that he necessarily loses on the entire case? I mean, couldn't you still win on the complaint you did file? In theory, he could win on his complaint, but he didn't plead enough in the original complaint, and there's not enough facts in the record to support a win. What more is needed? I mean, I understand that he tells us in the brief, oh, there's all this other discrimination, but if the only... If this guy had never said anything racist or whatever and then just says one day, I'm going to fire these four people because they are this race, that would seem to be enough, even if otherwise the person had never expressed their racial animus, right? It's not enough, Your Honor, because there's no other information of this steward manager having any sort of disparate hiring, firing or promotion of somebody in that protected race treating other people outside the protected class, not of those four individuals, more favorably. If you fire somebody because of their race, you don't need a long history of being racist. That is itself a problem. Isn't it? Correct, but we don't know if that is the cause of the termination, and we don't know, frankly, if these individuals were terminated based on the facts in the record. It could have been their performance. It could have been another protected factor, their age, something. We don't know, and he didn't say anything. All he did, Scott, was overheard the statement and relay it, and looking at the statement in isolation is not enough, even though there's a race potentially mentioned, and we don't know for sure that it even was. But we do have to believe it on a 12B6. I agree the jury could find Scott totally not believable, but that's not what we do on a 12B6. I mean, so that's not, we have to accept what was complained as true. Correct. So does the district court, and so do you for purposes of your argument, right? Correct. So that's the piece I'm having trouble with. It does seem problematic that somebody would fire someone because of their race. Now, I understand the argument that maybe that's not what this sentence meant, but your opponent says, well, ambiguity got to be construed in Scott's favor. What's your response to that? The response to that statement and the investigation with HR was January and February. He wasn't fired until end of May. This is months past when this initial thing happened. What about this constant back and forth on the retaliation that's going on? Right. So you know that you're in trouble potentially as the boss, so you have to start creating some evidence to support this firing of the guy. That might mean that it takes a few months. You got to start not approving his loans and la-di-da-di-da. And meanwhile, there's this constant back and forth on the retaliation that keeps going on. Why isn't that enough? Again, talking about a pretty low standard, the 12B6. Why isn't that enough to overcome that? Right, a low standard. And what Scott essentially is wanting this Court to do and wanting Judge Fitch to understand is he's saying, you know, the general corporate knowledge of the fact that I made this complaint is enough for retaliation. Rather, Benny Wyatt, the supervisor who failed his loans, who ultimately terminated him at the end of May, he didn't, we don't have any record that he knew about this complaint to HR. So we can't impute general corporate knowledge to Benny Wyatt for understanding that maybe there was a complaint to HR, maybe this happened. That's five months apart, and we don't know that he even knew there was a complaint. And same with Triggs, the other manager who overheard the statement. We don't know if either of them knew that Paul Scott made a statement to HR. So I think without knowing that, you can't bridge the gap at this point. And so you look at the first action, which is the investigation, and then you look at the termination, which was by somebody completely different who wasn't a part of the investigation, and we don't even know if he had knowledge of the investigation. So as I was saying, we filed an original complaint after U.S. Bank filed its motion to dismiss. Scott had the right to file an amended complaint, didn't, chose to stand on his original allegations. After the court granted the U.S. Bank's motion to dismiss and enter judgment, Scott had 28 days to file a motion under Rule 59E to alter or amend the judgment to permit him to amend his complaint. He could have stated the allegations he sought to provide at that time, or even attach a draft complaint of the motion with substance to apprise Judge Fisch and U.S. Bank of the allegations he intended to include. He didn't. So he stood on his pleadings the day he brought this notice of appeal, and he's still standing on his pleadings now. So we're here, frankly, because he didn't do what he was supposed to do and filed leave to amend, and he's now looking for this court for a lifeline. He failed to amend his complaint as a matter of right, failed to furnish the court with a proposed amendment, and failed to alert both the court and U.S. Bank to the substance of his proposed amendment. Instances where this court has found leave to amend have been starkly different facts than here. Most of the cases I had had an actual motion presented to the court, granted it was not timely filed, but there was still the substance component that the court had prior to the appeal. To remedy his failure to advise the district court of the substance of any allegations to support his claims under Title VII, because as you know, the opposition clause requires opposing, but you also have to oppose something under Title VII. And so even if we assume that it's race discrimination, there's still not enough that Judge found that wouldn't meet his initial low, pleading burden of race discrimination to survive a motion to dismiss. In any event, the supposed allegations required too much... Why couldn't it be a reasonable belief by a layperson? Because, Your Honor, just saying, I'm going to terminate these four individuals without nothing more, maybe that's a statement. But he didn't say, I'm terminating these four individuals with this, because I think it's race-based, or I think it's something. There's no second step of the inquiry, which is saying, you know, this is a statement that you overheard. And you have to oppose it. You have to say something. And it's not just hearing the conversation and reporting it, that's the opposition. Because if that were the standard, it would be anything you hear and report, you could potentially oppose, which would not be best practices. But there has to be more involved. And you have to say, I oppose, or, oh, I know this person has an issue with people in this protected class, and look what I just heard. It's, you know, smells like when there's smoke, there's fire kind of deal. But there's none of that opposition here. There's none of the Title VII opposition. There was just an opposition potentially to a statement, but no underlying Title VII opposition. And so, missing from the new allegations that he's proposed now, which he's conceded the support that he should be able to provide those facts now. The cases he do cite actually mislead the court because they're, you know, one of them, for example, is a prisoner case, which is not anywhere near the facts that we're dealing with here. He's now attempting to use this court as a vehicle to get these facts into the record now to cure his defective pleadings on appeal. He could have followed a substantive motion, but all we have is an undefined conceptual list of bulleted information that he wishes he would have pled, and he has no opportunities to do so. This court should not give him a lifeline that he requests and reverse a trial court decision on the basis of facts not in the record, which he even concedes in his briefing. There are so many things that Scott could have done here, but he chose not to do. If he had any good faith basis for alleging a reasonable belief under the opposition clause, or that he actually opposed the Title VII claim he believed had occurred, he didn't do so. He had every opportunity to do so and failed to do so now. And it was not, the judge should not commit error or have any abuse of discretion in determining his holding. If there's any more questions for me, then... All right. Thank you, Ms. Taylor. Thank you. Ms. Bowe, you've saved time for Bowe. Thank you, Your Honors. Scott is not relying upon general corporate knowledge for causation. Scott complained to Triggs in February and said, I'm being held to different standards in retaliation for my protected conduct. Scott complained to HR in April and said, I am being treated differently in retaliation for my protected conduct. Scott complained to Triggs and Wyatt in May and said, this is harassment because of my protected conduct. And then Wyatt said at the end of this meeting, oh, here's the number for HR. Why don't you go call them, which we allege, and I think a reasonable inference is that's a veiled threat to Scott's previous conduct. That is enough to establish a reasonable inference at the 12B6 stage that Wyatt had knowledge of Scott's protected conduct. That is especially true given the path that develops out of Scott's protected conduct as this court has found in right way and law. This court has found at the 12B6 stage in Collier that the comment of a supervisor saying, I'm going to spank you if you misbehave, is a reasonable belief of underlying misconduct because it was a comment by a supervisor against a specific employee. That's what you have here. You have a supervisor saying, I'm going to fire those four African Americans. That is what should be sufficient at the 12B6 stage. The U.S. Bank's requirement that Scott have pled this more allegations to support this case when it's in a case is just not necessary. He has sufficient factual basis to infer the reasonable belief. But we did put in that laundry list of evidence that we could assert, not because we wanted you to consider it, but because if the court and U.S. Bank are allowed to opine about all of this additional circumstantial evidence that's missing, oh, you didn't say this and you didn't say that and you didn't say something else, we should be able to say, well, if you give us an opportunity, this is what we'd say. But we understand that that's not evidence. Again, we felt that the initial statement tying a termination decision to someone's race is sufficient at the 12B6 station to establish a reasonable belief. And the court's request at ROA 66 for I wish you had all of this additional circumstantial evidence to support your claim and then to turn around and say, oh, but denying the motion for leave is futile, that was error. This court has often found that futile denial is reviewed de novo and it's error to say, gosh, if you had all this other evidence, you'd get there, oh, but it'd be futile to allow you a chance to plead that evidence. It's a claim within a claim and there was no reason to expect you would need it. Do you all have any additional questions? Thank you, Ms. Koch. Your case is under submission. The court will briefly review it.